

# COURT OF APPEALS
**SECOND DISTRICT OF TEXAS**
**FORT WORTH**

### NO. 02-13-00582-CR

EX PARTE BYRIAS ROBERSON

----------

FROM COUNTY COURT AT LAW NO. 1 OF WICHITA COUNTY
TRIAL COURT NO. 58017-E

----------

## DISSENTING OPINION

----------

I must respectfully dissent from the majority opinion because I believe appellate courts are obligated to admit that the emperor is wearing no clothes, no matter how popular the emperor might be.

Unlike trial judges, who primarily see only the conduct in the courtrooms over which they preside, appellate courts are presented with records from other courts in that county as well as other courts in other counties within that appellate district. Appellate judges are in a better position than trial judges to see patterns of conduct. Consequently, appellate judges have an obligation to speak up when

observed patterns show a course of conduct at odds with constitutional mandates and fundamental fairness.

The trial court granted Appellant Byrias Roberson's motion for mistrial as a result of a conversation between the prosecutor's investigator and a member of the jury after jeopardy had attached. After a second prosecution began, Appellant filed his application for writ of habeas corpus in the trial court, alleging that denial of habeas corpus relief would result in double jeopardy. In his prayer, Appellant asked the trial court to grant his application, issue the writ, conduct a hearing on the merits prior to trial, grant relief discharging him from restraint, and dismiss the prosecution.

The trial court set the matter for hearing on its merits, issued a ruling denying relief after the hearing, and certified Appellant's right to appeal.

The majority holds that the record supports the trial court's conclusion that Investigator Donnie Cavinder made an honest mistake. Respectfully, although the Texas Court of Criminal Appeals has abandoned *Bauder*[1] and returned to a standard requiring proof that the prosecution intended to cause a mistrial,[2] when the record shows such a total disregard for rules of trial and pretrial conduct that mistrial is mandated, it is difficult to understand how an objective observer can conclude that such conduct can be called "just an honest mistake." At some

---

[1]*Ex parte Bauder*, 974 S.W.2d 729 (Tex. Crim. App. 1998), *overruled by Ex parte Lewis*, 219 S.W.3d 335, 371 (Tex. 2007).

[2]*Francis v. State*, 428 S.W.3d 850, 855 (Tex. Crim. App. 2014).

2

point, appellate courts must hold that the conduct is so egregious that the party cannot avoid its consequences.

Appellant made appropriate pretrial requests to discover prior acts of misconduct that the State intended to use. No such discovery was provided by the State. Then Appellant filed motions in limine regarding extraneous acts of misconduct. The trial court heard the motions the day voir dire began. The prosecutor admitted that she anticipated

> testimony in this case regarding the officer's entry into the home. If defense counsel intends to challenge the legality of that entry, I would like the opportunity to question some of the State's witnesses regarding a prior encounter between the defendant and these witnesses about and regarding a disturbance call. He had barricaded himself and his family inside his home. The SWAT team was called to get him out of the home. Two of the members of the SWAT team are witnesses in this case. This prior incident between the defendant and these officers is important for several reasons. It goes to their familiarity with the defendant, their ability to identify him on the date of the offense. It's part of how they recognized him on the date of the offense. It also goes to their state of mind on the date of the offense, goes to why gang task force officers were asked to serve these warrants on the defendant, and also goes to their reason to believe that the defendant lived in this particular residence.

When the trial court asked for his response, defense counsel replied, "Well, Your Honor, we've asked or requested notice of any bad acts or convictions, and we haven't received any of those." The record reflects that Appellant had requested that notice at least as early as September 2012. His motion in limine was heard August 21, 2013. The trial judge responded,

> Well, let's do it this way. I'll go ahead and sustain or grant on this limine that y'all will approach, and then we would get into exactly what the officers could or could not go into. Without hearing them,

3

I'd be inclined to say they might have had previous contact or something like that that's how they recognized. But to go any further might be a problem. But we'll discuss that. So I'll go ahead and grant that limine on that ground. Make sure you come up before you start with them.

The lawyers selected the jury, and the jury was seated and sworn and heard Appellant plead not guilty before the trial judge adjourned the proceedings and released the jury.

Cavinder was present in the courtroom during voir dire but claimed that he left the courtroom before the jury was seated. The record reflects that the trial judge gave the following instruction to the venire during the time Cavinder said he was in the courtroom:

> To avoid looking like you are friendly with one side of the case, do not mingle or talk with the lawyers, the witnesses, the parties, or any other person who might be connected with or interested in the case. Do not remain within the hearing of anyone who might be discussing the case. These persons have to follow these same instructions as you . . . .

Cavinder was introduced to the venire as the investigator for the prosecution.

Both the State and the defense agree that Cavinder went personally to the judge, along with the prosecutors, to inform the judge that he had spoken with a juror, Eileen Vale. Both Cavinder and Vale testified about their encounter. Both agreed that Cavinder had approached Vale in the hallway outside the courtroom. That is, it was an intentional encounter on Cavinder's part, and it was not caused by anyone else's actions. Cavinder testified that he believed that Vale was a member of the venire who had been released from jury service, a Ms. Steele.

4

The record, however, clearly shows that Steele was not released from jury service until Vale was sworn as a juror. Steele was not excused for cause or for any other reason. She was released only because she was not chosen as a juror. It was only the seating of the jury that showed Steele's release. Cavinder could not have known Steele was released without also knowing that Vale had been seated as a juror. Indeed, when each side had submitted its strikes, the trial judge seated each juror by name. When he reached Vale, he called her name and then asked if he had pronounced it correctly. That is, Vale was singled out by name. Then the trial judge said,

> If each member of the jury will please stand and raise their right hand for me.
>
> (The jury was sworn)
>
> All right. Thank you. Be seated, please. All right. That's our lucky six. For everybody else who's here on the panel, I spoke with the district clerk, and me releasing you here today here in just a couple minutes will end your service for the week. . . .
>
> . . . .
>
> (Remaining jury panel exits courtroom)

Vale informed Cavinder that he was mistaken about her identity, and he appeared to recognize his error. According to both Vale and Cavinder, they continued to speak, even after he realized that she was not Steele. That is, Cavinder continued his conversation with juror Vale after realizing and admitting that she was not the venire member who had been excused. They agreed that he spoke with her about her game warden experience. Vale, however, disagreed

5

with Cavinder's representation that he did not discuss the case at bar. Specifically, Vale testified,

> JUROR VALE: From what I remember, he—he kind of made a comment about—I'm trying to—because I was heading down the stairs and he was telling me and then saying about—I'm trying to remember. Let me just—I just said it was okay, but we stopped the conversation right there because he didn't realize that at point I was a juror, a selected juror, I guess.

> THE COURT: You don't remember? We just have to be very specific.

> JUROR VALE: I know.

> THE COURT: Because it pertains to this case.

> JUROR VALE: Right.

> THE COURT: *You're sure his question or comment pertained to this particular case?*

> JUROR VALE: He just said—uh, I think he said, *"You were struck, but then we got you on" or something, or something to that effect*, which I think—which I think—it didn't—I mean, to me, it didn't—I kinda said, okay, whatever. I'm going to leave right now. [Emphasis added.]

Clearly, Vale believed that Cavinder was talking about the case at bar when he said that she had been struck but "we" managed to get her "back on." It is difficult to understand how Vale could have believed anything else. And it is difficult to understand why Cavinder would have told a venire member who had been excused that she had been struck but "we" managed to get her "back on."

The conscientious trial judge, who can only be commended for his handling of this situation, was concerned about the appearance of impropriety:

> What I'm dealing with now is something that would—whether there was any—and I'm not saying there was any intention on it; I'm not

6

saying who said what. However, what remains is the appearance. And the appearance that there was in her, at least in her mind, from her testimony—I mean that's—[DEFENSE COUNSEL] stated correctly. That's exactly what I heard.

And I want both sides to have a fair trial. And with ***that appearance that there was some influence with regard to that juror, I am left with no option except granting a mistrial. There is no way it can be remedied.*** And I—I know y'all have—we have been through a rough day yesterday. And I apologize that that work is for naught. And I'm not casting fault on Investigator Cavinder at all. I understand that was an honest mistake. I completely believe that he believed he was speaking to Ms. Steele.

However, it's that appearance that we just cannot get by in this matter. So for that reason, I'm going to grant a mistrial. Now, we'll talk later whether double jeopardy has attached. I don't think it has . . . . [Emphasis added.]

He had no alternative but to grant a mistrial. The positive result of the mistrial for the State was that its notice of intent to use extraneous acts of misconduct against Appellant became timely and those extraneous acts became admissible.

The rule is well established that the knowledge of one part of the prosecution team is imputed to all members of the prosecution team.[3]

The prosecutors were aware that the venire member with whom Cavinder improperly spoke had been sworn as a juror. The record casts doubt on

---

[3]*Ex parte Adams*, 768 S.W.2d 281, 291–92 (Tex. Crim. App. 1989) (holding that "as a part of the investigating team [the Dallas police officer's] knowledge of [the witness's] lack of identification at the lineup and his assistance to her" was imputed to the prosecutor); *see also Rubalcado v. State*, 424 S.W.3d 560, 574 (Tex. Crim. App. 2014) (imputing knowledge of one county's law enforcement to the law enforcement of another county).

7

Cavinder's testimony concerning his own knowledge. The trial judge singled Vale out when swearing in the jury, asking if he had pronounced her name correctly. Further, the record shows that Vale was chosen and sworn as a juror before Steele was released with the other members of the venire who were not chosen for the jury. It is therefore difficult to understand how Cavinder could have known that Steele was not chosen as a juror but did not know that Vale was selected as a juror.

The Vale's testimony concerning the improper conversation with Cavinder also indicated his awareness that she had been chosen as a juror. Specifically, she stated that he had told her that she had been struck but had also told her, "[T]hen we got you on." Even Cavinder admitted that he continued to speak with her after he realized that she was not the venire member who had been released from jury service. If we give total deference to the determinations of the trial judge, we must conclude that when Cavinder first approached Vale, he believed that she was Steele. If he was aware that Steele had not been chosen for the jury, he had to be aware that Vale was, either as a result of his own observation or as a result of the imputed knowledge of the prosecuting attorneys. By his own admission, he remembered that Vale was the one who had gone to game warden school. Yet he continued to speak with her.

After hearing only Cavinder's admissions, the trial judge did not yet believe that there was reason to declare a mistrial. After hearing Vale's testimony, however, he concluded that the trial could not continue. Implicitly, the trial judge

8

believed her testimony, including the statement that Cavinder told her that she had been struck, but "we got you on."

Given the record before us, it is impossible to conclude that Cavinder was unaware that Vale had been chosen for the jury at the time they spoke and he realized she was not Steele. This knowledge means that there is no justification for the conversation. The mistrial was caused by an improper communication by a member of the prosecution team with a juror. The trial judge properly granted the mistrial because of the influence of that conversation on a juror. For the same reason, the trial judge should have granted Appellant's requested habeas relief.

The prosecution did not provide mandated discovery to the defense. The trial judge ruled that the notice of extraneous acts of misconduct that the State intended to offer into evidence was untimely and that the evidence, presumably, were inadmissible. Perhaps the decision to withhold discovery was a trial tactic. If so, failing to comply with discovery mandated by rule, statute, or court order renders that evidence inadmissible at trial. The Texas Court of Criminal Appeals has held

> Rule 404(b) literally conditions the admissibility of other-crimes evidence on the State's compliance with the notice provision of Rule 404(b). . . .
>
> Since the notice requirement of Rule 404(b) is a rule of evidence admissibility, then it is error to admit Rule 404(b) evidence

9

when the State has not complied with the notice provision of Rule 404(b).[4]

When the trial judge suggested that would be his ruling, the State clearly benefitted from the mistrial caused by Cavinder's actions. That is, the time delay between the mistrial and future trial setting erased the notice and admissibility issues.

Case law instructs us that double jeopardy prohibitions bar retrial when the prosecution intends to cause a mistrial.[5] The *Masonheimer* court held that the prosecution's hiding of *Brady* material to avoid an acquittal was sufficiently egregious conduct to bar retrial after the trial court was forced to grant a mistrial because this prosecutorial misconduct was discovered.[6]

Case law does not explain how we are to determine motive when it is an investigator and not prosecutors who commits the misconduct, and misconduct it certainly was. There are only two reasons an experienced investigator would tell a member of the jury that she had been struck but the prosecution had managed to get her back onto the jury: either he was attempting to cause a mistrial or he was attempting to deprive the defendant of a fair trial by an impartial jury. In light of the fact that the State had failed to disclose prior bad acts it fully intended to use at trial, despite Appellant's timely request for disclosure, and in light of the

---

[4]*Hernandez v. State*, 176 S.W.3d 821, 824 (Tex. Crim. App. 2005).

[5]*Ex parte Masonheimer*, 220 S.W.3d 494, 509 n.21 (Tex. Crim. App. 2007).

[6]*Id.* at 507–08.

trial court's statement that those bad acts would probably not be admitted before the jury because of the failure to disclose them, it is impossible to say that the mistrial did not benefit the State.

The conscious decision of the State to withhold such mandated discovery is particularly disturbing in light of its similar decisions in *Dabney v. State*,[7] *Pitman v. State*,[8] and *Juarez v. State*.[9]

To hold that retrial is not barred by double jeopardy is to condone and encourage such conduct. We have an obligation to both the bench and the bar to hold, as the trial court did when granting the mistrial, that ignoring court-ordered or statutorily- or rule-mandated discovery is not acceptable trial strategy. I would therefore reverse the order of the trial court denying habeas relief and remand this cause to the trial court with instructions to grant Appellant's requested habeas relief and enter an order of dismissal. Because the majority does not, I respectfully dissent.

---

[7]No. 02-12-00530-CR, 2014 WL 5307178, at *7–9 (Tex. App.—Fort Worth Oct. 16, 2014, pet. filed) (mem. op., not designated for publication).

[8]372 S.W.3d 261, 268–70 (Tex. App.—Fort Worth 2012, pet. ref'd).

[9]No. 02-08-00167-CR, 2009 WL 1564926, at *1 & n.2 (Tex. App.—Fort Worth June 4, 2009, no pet.) (mem. op., not designated for publication).

/s/ Lee Ann Dauphinot
LEE ANN DAUPHINOT
JUSTICE

PUBLISH

DELIVERED:  January 8, 2015