PD-0241-15

**Cause No. _____**

PD-0241-15
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 3/4/2015 4:20:51 PM
Accepted 3/4/2015 6:29:05 PM
ABEL ACOSTA
CLERK

In the Court of Criminal
Appeals of Texas

**Antonio Leija, Jr.**,
Appellant

v.

**State of Texas**,
Appellee

On Review from Cause No. 02-13-00473-CR
in the Second Court of Appeals
Fort Worth, Texas

**State's *Emergency* Motion to Stay Proceedings in the
Second Court of Appeals**

**To the Court of Criminal Appeals:**

This Second Court of Appeals has recently issued an order denying *State's Motion to Recuse the Hon. Justice Dauphinot* on February 26, 2015.[1] The State has promptly filed its Petition for Discretionary Review today, March 4, 2015.[2]

---

[1] *See* Attachment A, The State's Motion to Recuse the Hon. Justice Dauphinot (attachments omitted) and Attachment B, Order of the Second Court of Appeals.

[2] *See* Tex. R. App. P. 68.2(a).

The State filed a motion to stay appellate proceedings in this case the day immediately following the Second Court of Appeals' ruling.[3] The motion for stay was unopposed.[4] As three out of seven justices sitting en banc would have granted recusal, the motion for stay was made in good faith and not for purposes of delay. Unfortunately, five days have passed and the Second Court of Appeals has not yet ruled on the motion to stay.

Texas Rule of Appellate Procedure 16.3(c) expressly provides that "the denial of a recusal motion is reviewable." Therefore, the State has a clear right to file for petitionary review and have that petition determined before opinions are issued on the merits in the contested cases. If Justice Dauphinot has, in fact, demonstrated a disqualifying predisposition against the Wichita County District Attorney's Office that compromises her appearance of being impartial, as three of colleagues have so determined as expressed by their public votes to recuse her, then Justice Dauphinot should not participate in the contested cases until the State has exhausted its review under 16.3(c).

The Second Court of Appeals issues opinions on Thursdays. The State is seeking emergency relief since the Fort Worth Court of Appeals

---

[3] *See* Attachment C.
[4] *Id.*

2

has failed to grant a stay pending the disposition of the State's petition pursuant to 16.3(c).

Accordingly, the State prays that this court immediately order a stay of proceedings in the Second Court of Appeals, and further order said court to issue no opinions in this case until the State's accompanying *Petition* is heard.

Respectfully submitted,

/s/Maureen Shelton
**Maureen Shelton**
Criminal District Attorney
Wichita County, Texas
State Bar No. 00786852
Maureen.Shelton@co.wichita.tx.us


 /s/John Gillespie
**John Gillespie**
First Asst. Criminal District Attorney
Wichita County, Texas
State Bar No. 24010053
John.Gillespie@co.wichita.tx.us

900 Seventh Street
Wichita Falls, Texas 76301
(940) 766-8113 phone
(940) 766-8177 fax

## Certificate of Compliance

I certify that this document contains 326 words, counting all parts of the document except those excluded by Tex. R. App. P. 9.4(i)(1). The body text is in 14 point font, and the footnote text is in 12 point font.

/s/Maureen Shelton
**Maureen Shelton**

## Certificate of Service

I do certify that on March 4, 2015, a true and correct copy of the above document has been served electronically to Michael F. Payne (attorney for Antonio Leija, Jr.) at michaelfpayne@gmail.com and the State Prosecuting Attorney's Office at information@spa.texas.gov.

/s/Maureen Shelton
**Maureen Shelton**

## Certificate of Conference

I certify that staying proceedings was discussed with Michael Payne (attorney for Antonio Leija) in person on February 27, 2015, and that he is unopposed to staying proceedings at the Court of Appeals.

/s/Maureen Shelton
**Maureen Shelton**

ACCEPTED
02-13-00473-CR
SECOND COURT OF APPEALS
FORT WORTH, TEXAS
1/21/2015 1:40:05 PM
DEBRA SPISAK
CLERK

**No. 02-13-00473-CR**

Court of Appeals
Second District of Texas
Fort Worth

**Antonio Leija, Jr.,**
Appellant

v.

**State of Texas,**
Appellee

On Appeal From No. 52,563-B in the 78th District Court of Wichita County, Texas, Hon. Judge Fudge Presiding

**State's Motion to Recuse the Hon. Justice Lee Ann Dauphinot**

**To the Honorable Justices of this Court:**

The Wichita County Criminal District Attorney, Maureen Shelton, and her staff have the upmost respect for the Fort Worth Court of Appeals and its justices. The District Attorney and her staff also take their oath to uphold the Constitution and the law very seriously.

Regrettably, a justice of this honorable court has leveled baseless accusations against the District Attorney and her staff in a published,

1

dissenting opinion alleging an observable pattern of violating the constitution and fundamental fairness.[1]

A fair reading of the dissent reveals (1) the extremely serious nature of the accusations; (2) that the accusations are completely unfounded with no evidentiary support; (3) that the accusations were made with no way for the District Attorney to respond or rebut with evidence; (4) that in dealing with the Wichita County District Attorney as a party, the justice will not follow the binding precedent of the Court of Criminal Appeals, credibility determinations of the trial judge, or accurately represent the trial court record; and (5) that the justice applies a different set of rules when the WCDA is a party than she does in other cases.[2]

Simply stated, this justice has so unequivocally expressed her antagonism toward the Wichita County District Attorney and her staff in the dissent and has demonstrated that it affects her ability to be fair and impartial to this office as a party.  Thus, this justice has unfortunately left the Wichita County District Attorney with no choice but to seek her recusal to preserve our Due Process rights to a fair and impartial hearing body.

---

[1]     *Ex parte Roberson,* No. 02-13-00582-CR, 2015 WL 148476, at \*5 (Tex. App.—Fort Worth Jan. 8, 2015, no pet. h.) (Dauphinot, J., dissenting).
[2]     *Id.*

2

In light of the clearly articulated antagonism toward the Wichita County District Attorney and her staff, as expressed in Justice Dauphinot's recent scathing dissenting opinion in *Ex parte Byrias Roberson* where Justice Dauphinot expresses deeply-held, personal, speculative opinions about the Wichita County District Attorney's Office unrelated to the specific facts before this Court in *Ex parte Byrias Roberson*, and where Justice Dauphinot refuses to follow binding precedent and ignores the trial record,[3] combined with her opinion in *Johnson v. State* being withdrawn on en banc reconsideration, and her dissenting opinion on rehearing in same, the State promptly files this motion and requests that Justice Dauphinot recuse herself from the above-styled cases, because her impartiality might reasonably be questioned, and because she has displayed and expressed a personal bias or prejudice concerning the Wichita County Criminal District Attorney's Office (WCDA).

Absent self-recusal, the State requests that members of the Fort Worth Court of Appeals decide this motion en banc, as required by the Texas Rules of Appellate Procedure.

---

[3] *Id.*

3

*Applicable law*

Due process requires a neutral and detached hearing body or officer.[4] A party may file a motion to recuse a justice before whom the case is pending.[5] The motion must be filed promptly after the party has reason to believe that the justice should not participate in deciding the case.[6] When an appellate justice refuses to recuse herself, the remaining justices in the court must hear the motion en banc.[7] The challenged justice may not sit with the remainder of the court to consider the motion against her.[8]

The grounds for recusal on appeal are the same as those provided in the Texas Rules of Civil Procedure.[9] Specifically, a justice must recuse herself if (1) the justice's impartiality might reasonably be questioned or (2) the justice has a personal bias or prejudice concerning the party.[10]

While courts enjoy a presumption of impartiality,[11] this presumption is overcome if "a reasonable member of the public at large, knowing all the

---

[4]     *Brumit v. State*, 206 S.W.3d 639, 645 (Tex. Crim. App. 2006); *Gagnon v. Scarpelli*, 411 U.S. 778, 786 (1973); U.S. CONST. amend XIV.

[5]     Tex. R. App. P. 16.3(a).

[6]     *Id.*

[7]     Tex. R. App. P. 16.3(b).

[8]     *Id.*

[9]     Tex. R. App. P. 16.2.

[10]     Tex. R. Civ. P. 18b(b)(1)-(2).

[11]     *Brumit*, 206 S.W.3d at 645.

facts in the public domain concerning the judge and the case, would have a reasonable doubt that the judge is actually impartial."[12]

"Bias or prejudice" is a disposition or opinion that is somehow wrongful or inappropriate, either because it is undeserved, resting upon knowledge that the subject ought not to possess, or because it is excessive in degree.[13] Recusal is required for a justice with a bias showing a high degree of antagonism.[14] When bias is alleged as the ground for recusal, the movant must provide sufficient evidence to establish that a reasonable person, knowing all the circumstances involved, would harbor doubts as to the impartiality of the judge.[15]

*Standard of Review*

Recusal is required when the movant provides facts demonstrating the presence of bias or partiality "of such nature and extent as to deny the

---

[12] *Kirby v. Chapman*, 917 S.W.2d 902, 908 (Tex. App.—Fort Worth 1996); *Ex parte Ellis*, 275 S.W.3d 109 (Tex. App.—Austin 2008, no pet.); *Kniatt v. State*, 239 S.W.3d 910 (Tex. App.—Waco 2007, no pet); *Burkett v. State*, 196 S.W.3d 892, 896 (Tex. App.—Texarkana 2006, no pet.); *Sears v. Olivarez*, 28 S.W.3d 611, 615 (Tex. App.—Corpus Christi 2000). *See Rogers v. Bradley*, 909 S.W.2d 872 (Tex. 1995) ("Because I believe a reasonable member of the public at large, knowing all the facts in the public domain, would doubt that the justices … are actually impartial I recuse myself from participation in all matters related to this cause.").

[13] *Liteky v. U.S.*, 510 U.S. 540 (1994).

[14] *Roman v. State*, 145 S.W.3d 316 (Tex. App.—Houston 2004, pet. ref'd).

[15] *Abdygapparova v. State*, 243 S.W.3d 191 (Tex. App.—San Antonio, pet. ref'd), citing *Kemp*, 846 S.W.2d at 305.

movant due process of law."[16]  The Court should recuse a judge who displays an "attitude or state of mind so resistant to fair and dispassionate inquiry" as to cause a reasonable member of the public to question the objective nature of the judge's rulings.[17]  Evidence of a "deep-seated favoritism or antagonism that would make fair judgment impossible" necessitates recusal.[18]  The right to an impartial judge is so important that its violation constitutes a structural error that defies harm analysis.[19]

## I. Justice Dauphinot has publicly expressed a high degree of antagonism toward the Wichita County Criminal District Attorney's Office.

Justice Dauphinot's own words in her recent dissent in *Ex parte Byrias Roberson*[20] and her actions in departing from the binding case law and the record of the case are the best evidence of the high degree of antagonism that she has formed toward the WCDA and its prosecutorial staff as a whole.

---

[16] *Id.*, citing *Office of Pub. Util. Counsel v. Public Util. Comm'n*, 185 S.W.3d 555, 574 (Tex. App.—Austin 2006, pet. denied) and *Roman*, 145 S.W.3d at 321.

[17] *Liteky,* 510 U.S. at 557-58 (Kennedy, J., concurring).

[18] *Liteky*, 510 U.S. at 555.

[19] *Abdygapparova*, 243 S.W.3d at 209, citing *Arizona v. Fulminante*, 499 U.S. 279, 309 (1991); *Chapman v. California*, 386 U.S. 18, 23 & n. 8 (1967); and *Turney v. Ohio*, 273 U.S. 510 (1927).

[20] No. 02-13-00582-CR, 2015 WL 148476 (Tex. App.—Fort Worth Jan. 8, 2015, no pet. h.) (Dauphinot, J., dissenting).

**1. Justice Dauphinot's hostile and injudicious language shows her high degree of antagonism.**

First, Justice Dauphinot's seething dissent uses hostile and injudicious language to describe the WCDA. The language itself shows the significant antagonism that Justice Dauphinot possesses for the WCDA.

Justice Dauphinot begins by equating the Wichita County District Attorney with a popular emperor and declaring that she has no clothes on: "I believe appellate courts are obligated to admit that the emperor is wearing no clothes, no matter how popular the emperor might be."[21]

The very selection of the "Emperor-has-no-clothes" bromide coupled with the additional reference of "no matter how popular the emperor might be" are improper for a dispassionate appellate justice simply judging the facts before her. Rather, they clearly express a high degree of animus by Justice Dauphinot toward the alleged, unclothed, yet popular emperor: the elected District Attorney of Wichita County. The fact that Justice Dauphinot elects to frame her entire dissent as telling a naked emperor a few things (i.e. about alleged discovery improprieties) reveals that this is about more than the facts of the misdemeanor case before the Court; rather it is about Justice Dauphinot's general antagonism toward the elected District

---

[21]  *Roberson*, 2015 WL 148476 at *5 (Dauphinot, J., dissenting).

Attorney of Wichita County.[22]  Justice Dauphinot's choice of that particular

analogy shows an improperly demeaning and non-judicial tone by an

appellate justice toward one of the parties of an appeal.

2. **Justice Dauphinot expresses general opinions that she has formed about the Wichita County District Attorney and her staff that she clearly carries from case-to-case.**

Second, instead of limiting her dissent to the issues before the court

in *Roberson*, Justice Dauphinot vividly expresses general opinions that she

has formed against the WCDA in general.  First, as she directs her dissent

to the popular, yet unclothed emperor (i.e. the elected District Attorney), it

is clear this opinion is about far more than the issues before the Court in *Ex

parte Roberson*.  Justice Dauphinot confirms this in the second paragraph

when she states, "[a]ppellate judges are in a better position than trial

judges to see patterns of conduct."[23]  Justice Dauphinot then casts this

case as part of an observed pattern: "appellate judges have an obligation to

speak up when observed patterns show a course of conduct at odds with

constitutional mandates and fundamental fairness."[24]

---

[22]     The reference to "no matter how popular the emperor may be" makes it clear that this is directed to the District Attorney, the only elected member of the District Attorney's Office, rather than the misdemeanor investigator or misdemeanor prosecutor. "Emperor" clearly refers to the one in charge—i.e. the elected District Attorney.

[23]     *Roberson*, 2015 WL 148476 at *5 (Dauphinot, J., dissenting).

[24]     *Id*. at *5-6.

It is clear from Justice Dauphinot's own words that she is looking beyond the record in this case to "observed patterns" and that these "observed patterns" have prompted her to "speak up" and tell the popular, yet unclothed emperor (the elected District Attorney) that her office is "at odds with constitutional mandates and fundamental fairness."[25]

Justice Dauphinot concludes her dissent by placing *Ex parte Roberson* within an observed pattern by citing *Dabney v. State, Pitman v. State*, and *Juarez v. State*. Justice Dauphinot could not be clearer: she would decide *Ex parte Roberson* not just on the record before the Court, but she would use an observed pattern as her rationale for deciding the case and impugning the motivations and integrity of the Wichita County District Attorney and her staff, including the misdemeanor prosecutor and investigator. Thus, Justice Dauphinot has admitted she has formed opinions about the WCDA that she carries from case-to-case that influence her judgment and that even outweigh the record before her in any particular case.

---

[25] *Id.*

**3. Justice Dauphinot's antagonism to the WCDA is demonstrated by her willingness to substitute her judgment for the trial judge's on matters of credibility determination and by ignoring settled, binding case law.**

Justice Dauphinot's deep-seated and demonstrated antagonism toward the WCDA has significant consequences: it is so great that it justified her substituting her own judgment for the trial judge's on issues of credibility determination and ignoring the settled, binding case law which the majority easily applied.

This Court is required to follow binding precedent of the Court of Criminal Appeals and credibility determinations of the trial judge.[26] Justice Dauphinot is a long-tenured and experienced jurist and knows that she is bound by precedent, by credibility determinations by the trial judge, and by the record in the case.[27] Since Justice Dauphinot ignores the credibility

---

[26] *See Vance v. Hatten*, 508 S.W.2d 625 (Tex. Crim. App. 1974) ("no other court of this state has the authority to overrule or circumvent [the Court of Criminal Appeals'] decisions or disobey its mandates" and to question this "would render the entire appellate process nothing more than an exercise in futility."); *Francis v. State,* 428 S.W.3d 850, 855 (Tex. Crim. App. 2014) ("An appellate court must pay almost absolute deference to the trial court's findings of fact based on determinations of credibility or demeanor…").

[27] *See, e.g. State v. Woodard*, 314 S.W.3d 86, 100 (Tex. App.—Fort Worth 2010), *aff'd*, 341 S.W.3d 404 (Tex. Crim. App. 2011) (Dauphinot, J., dissenting) ("We cannot and must not substitute our determination of the facts and the credibility of the witnesses in order to achieve the result we believe the trial court should have reached."); *State v. Stevenson*, 993 S.W.2d 857, 867 (Tex. App.—Fort Worth 1999, no pet.) (Justice Dauphinot states, "Because a decision of the court of criminal appeals is binding precedent, we are compelled to comply with its dictates."); *Jordy v. State*, 969 S.W.2d 528, 532 (Tex. App.—Fort Worth 1998, no pet.) (Justice Dauphinot explains "When the findings are based on an evaluation of a witnesses' credibility and demeanor,

determinations of the trial judge, substitutes her own credibility estimation for the trial judge's, and ignores settled precedent and the record in cases involving the WCDA, she must be harboring a deep-seated antagonism toward the WCDA. Any one of these would be a serious departure from judicial norms; taken together they show her undeniable animus and its influence.

### a) Justice Dauphinot would substitute her credibility judgment for the trial judge based upon the "observed patterns" she references.

Even though it is well-established that a trial judge's determinations of matters of credibility entitled to almost total deference from an appellate court, Justice Dauphinot would ignore this precedent because she insists she is in a better position than the trial judge to discern the motivations of the DA investigator and the WCDA.[28] Justice Dauphinot unambiguously states, "[u]nlike trial judges, who primarily see only the conduct in the courtrooms over which they preside, appellate courts are presented with records from other courts in that county…Appellate judges are in a better

---

the appellate court should afford almost total deference to the trial court's fact findings.").

[28] *Guzman v. State*, 995 S.W.2d at 87; *Jordy v. State*, 969 S.W.2d 528, 532 (Tex. App.—Fort Worth 1998, no pet.) ( "When the findings are based on an evaluation of a witnesses' credibility and demeanor, the appellate court should afford almost total deference to the trial court's fact findings.").

position than the trial judge to see patterns of conduct."[29]  Thus, Justice Dauphinot begins her dissent by stating why she believes she is in a better position than the trial judge to know what was really going on in the County Court at Law #1 of Wichita County.

Justice Dauphinot cites the trial judge's credibility determination relating to Investigator Cavinder's conduct: "And I'm not casting fault on Investigator Cavinder at all.  I understand that was an honest mistake. I completely believe that he believed he was speaking to Ms. Steele."[30] Then, Justice Dauphinot promptly ignores this credibility determination of the trial judge and instead substitutes her own judgment: "The record casts doubt on Cavinder's testimony concerning his own knowledge."[31]  Despite the trial judge stating on the record that he was not casting fault on Investigator Cavinder, that it was an "honest mistake" and that he completely believed Cavinder, Justice Dauphinot instead implicitly calls Cavinder a liar and relates that she does not believe him.[32]

Justice Dauphinot, based upon her antagonism toward the WCDA and the "observed patterns" of abuse that she claims to have discerned, has subsumed a power not granted to her by the Rules of Appellate

---

[29]     *Roberson*, 2015 WL 148476 at *5-6. (Dauphinot, J., dissenting).
[30]     *Id*. at *7.
[31]     *Id*. at *7.
[32]     *Id*. at *8.

12

Procedure, the Court of Criminal Appeals or the law of the State of Texas: the power to re-determine issues of credibility.[33] This is irrefutable evidence of the high antagonism that Justice Dauphinot expresses toward the WCDA.

**b) Justice Dauphinot's antagonism toward the WCDA is also evidenced by her refusal to apply the binding precedent.**

While Justice Dauphinot recites that the Court of Criminal Appeals requires proof that the prosecution intended to cause a mistrial for jeopardy to bar a second prosecution, Justice Dauphinot ignores that standard in favor of her own standard: "At some point, appellate courts must hold that the conduct is so egregious that the party cannot avoid its consequences."[34] Instead of applying the Court of Criminal Appeals factors in *Ex parte Wheeler* (as the majority opinion does), Justice Dauphinot ignores the *Wheeler* factors and seeks to apply her own standard formulated ad hoc, unmoored from the precedent of the Court of Criminal Appeals.[35] This is not a situation where Justice Dauphinot simply disagrees with the majority about the particular *Wheeler* factors or how much weight to give them; rather, Justice Dauphinot would reverse the

---

[33]    *See Francis,* 428 S.W.3d at 855; *Guzman*, 995 S.W.2d at 87.
[34]    *Roberson*, 2015 WL 148476 at *5 (Dauphinot, J., dissenting).
[35]    *Roberson*, 2015 WL 148476 at *10-11 (Dauphinot, J., dissenting).

case without reference to the binding precedent.[36] The only explanation for Justice Dauphinot failing to engage and apply binding precedent cited in the majority opinion is that she is solely motivated by her antagonism toward the WCDA.

c) **Justice Dauphinot's antagonism is further displayed by the unwarranted speculation and assumptions that she makes in *Ex parte Roberson.***

In addition to ignoring the credibility determination of the trial judge and failing to apply binding precedent, Justice Dauphinot's dissent also contains unsupported speculations and assumptions which clearly flow from her antagonism toward the WCDA.[37]

In rejecting Investigator Cavinder's sworn testimony, impugning him as a liar, and rejecting the trial judge's determination that Investigator Cavinder testified honestly, Justice Dauphinot seeks a motivation for Investigator Cavinder's actions other than an "honest mistake."[38] Thus, Justice Dapuhinot advances a theory that Investigator Cavinder's actions were part of the prosecutor's strategy to obtain more time to give discovery notice.[39] Justice Dauphinot's theory was that the prosecutor and the

---

[36]   *Id.*
[37]   *Id.* at *6-10.
[38]   *Id.* at *7-8.
[39]   *Id.* at *10-11.

14

investigator colluded to obtain a mistrial so that the prosecutor could have more time to give extraneous notice concerning the previous encounter.[40]

First, there is no evidence in the record from either Investigator Cavinder, nor the prosecutor, nor any other witness to support this theory as the reason for Investigator Cavinder's actions.[41]

Secondly, there had been no ruling by the trial court excluding anything; rather, the trial judge had just granted a motion-in-limine.[42] It is well-established law that a motion-in-limine preserves nothing for review and just requires the parties to approach.[43]

Third, the prosecutor actually stated on the record that she had no intent to mention the previous entry except if the defense questioned whether the officers were familiar with the defendant.[44]

Fourth, Justice Dauphinot claims the prosecutor engaged in a "conscious decision" to withhold mandated discovery as a trial tactic.[45] There is simply no support that the prosecutor engaged in any trial tactic, that the prosecutor made a "conscious decision," or that the information

---

[40]     *Id.* at *10-11.
[41]     State's Exhibit I, III R.R. at 156-158 (testimony of Donnie Cavinder) & IV R.R. at 5-7 (testimony of Juror Vale).
[42]     Attachment A, III R.R. at 5.
[43]     *Brazzell v. State*, 481 S.W.2d 130, 131 (Tex. Crim. App. 1972).
[44]     Attachment A, III R.R. at 5-6.
[45]     *Roberson*, 2015 WL 148476 at *9 (Dauphinot, J., dissenting).

even needed to be disclosed.[46]  Additionally, no offer of proof or evidentiary ruling was made [47] thus, Justice Dauphinot elevated speculation to established fact without regard to the trial record.[48]

Fifth, while Justice Dauphinot speculates that the prosecutor plotted with the investigator to cause a mistrial so the prosecutor could have more time to offer extraneous notice in a new case, the trial judge had indicated that he was inclined to let the officers say they were familiar with the defendant (which is what the prosecutor wanted).[49]  So, while the court made no ruling more than a motion in limine, the court indicated that the prosecutor would be able to ask the officers whether they were familiar with the defendant from the past.[50]  Thus, Justice Dauphinot's speculation as to a plot to obtain a mistrial is completely misguided.  Justice Dauphinot's animus to the WCDA is so great that she sees motives for improper conduct which are not born-out by the record.

Sixth, while Justice Dauphinot states "[t]he prosecution did not provide mandated discovery to the defense," this proposition is also

---

[46]    *See* Attachment A, IV R.R. at 9 ("I understand that was an honest mistake. I completely believe that [Cavinder] believed he was speaking to Ms. Steele.").  See also Attachment A, III R.R. at 4-14 (hearing on motions in limine).  See also generally Attachment A, I R.R. (showing no hearing requesting compelled discovery).

[47]    *See* Attachment A, III R.R. (motion in limine and trial on the merits).

[48]    *Roberson,* 2015 WL148476 at *11 (Dauphinot, J., dissenting).

[49]    Attachment A, III R.R. at 6.

[50]    *Id*.

speculation without any evidentiary support.[51]   While there was some discussion on the record of what the prosecutor would ask "if defense counsel intends to challenge the legality of that entry,"[52] there was never an offer of proof in the record or a ruling by the trial judge.[53]  A motion in limine is not a ruling on admissibility.[54]  Yet, Justice Dauphinot states "[t]he trial judge ruled that the notice of extraneous acts of misconduct that the State intended to offer into evidence was untimely and that the evidence, presumably, were inadmissible."[55]  When he granted the limine, the trial judge stated that: "Without hearing [the witnesses], I'd be inclined to say they might have had previous contact or something like that that's how they recognized.  But to go any further *might* be a problem.  But we'll discuss that.  So I'll go ahead and grant that limine on that ground.  Make sure you come up before you start with them."[56]

Thus, Justice Dauphinot conflates a ruling on a motion in limine with an evidentiary ruling at trial when she wrongly stated that the trial judge had "ruled that the notice of extraneous acts of misconduct that the State

---

[51]   *Roberson*, 2015 WL 1484765 at *11 (Dauphinot, J., dissenting).
[52]   Attachment A, III R.R. at 5.
[53]   *See* Attachment A, III R.R. (motion in limine and trial on the merits).
[54]   *Brazzell v. State*, 481 S.W.2d 130, 131 (Tex. Crim. App. 1972).
[55]   *Roberson*, 2015 WL 148476 at *8 (Dauphinot, J., dissenting).
[56]   *See* Attachment A, III R.R. at 6 (transcript excerpts in Roberson).

17

intended to offer into evidence was untimely and that the evidence, presumably, was inadmissible."[57] The trial judge made no such ruling.[58]

Justice Dauphinot, herself, has previously stated that "The granting of a motion in limine is not a ruling on the admissibility of the evidence and does not preserve error. A motion in limine simply prohibits references to specific issues without first obtaining a ruling on the admissibility of those issues outside the presence of the jury."[59] Justice Dauphinot clearly understands the difference between a ruling on a motion in limine and an evidentiary ruling.[60] That Justice Dauphinot would misrepresent a ruling on a motion in limine as an evidentiary ruling can only be motivated by her high antagonism to the WCDA and demonstrates that the she applies a different set of rules when the WCDA is a party than she does in other cases.[61]

---

[57] *Roberson*, 2015 WL 148476 at *8 (Dauphinot, J., dissenting).
[58] *See* Attachment A, III R.R. at 4-14 (hearing on motions in limine).
[59] *BNSF Railway Co. v. Phillips*, 434 S.W.3d 675, 699 (Tex. App.—Fort Worth 2014, no pet. history).
[60] *Id*.
[61] *Compare BNSF Railway Co.*, 434 S.W.3d at 699 (Justice Dauphinot states: "The granting of a motion in limine is not a ruling on the admissibility of the evidence and does not preserve error. A motion in limine simply prohibits references to specific issues without first obtaining a ruling on the admissibility of those issues outside the presence of the jury.") *with Roberson*, 2015 WL 148476 at *8 (Dauphinot, J., dissenting) ("The trial judge ruled that the notice of extraneous acts of misconduct that the State intended to offer into evidence was untimely and that the evidence, presumably, was inadmissible."). It is clear when the party is not the WCDA, Justice Dauphinot understands a ruling on a motion in limine is not an evidentiary ruling.

**II.** **The Wichita County District Attorney denies in the strongest terms possible Justice Dauphinot's outrageous suggestion that her office engages in a pattern of misconduct that violates the constitution and fundamental fairness.**

**Further, Justice Dauphinot violated judicial principles by making such a sweeping pronouncement on extremely limited information when it was not a case or controversy before the court and the parties had no opportunity to provide testimony or evidence on Justice Dauphinot's alleged pattern to a trial court.**

First, the Wichita County District Attorney denies in the strongest terms possible Justice Dauphinot's outrageous suggestion that her office engages in a pattern of misconduct that violates the constitution and fundamental fairness. The Wichita County District Attorney takes her oath to enforce the Constitution and the laws of the State of Texas extremely seriously.

Second, Justice Dauphinot's assertion is all the more indefensible because (1) the Wichita County District Attorney's Office never received an opportunity before a trial court as a fact-finder to offer facts or evidence to show the utter fallaciousness of this assertion since it was not an issue before the trial court and Justice Dauphinot is expressing opinion on facts not in the record in the *Roberson* case; (2) Justice Dauphinot cites three cases for her alleged pattern out of thousands of cases handled by the

WCDA; and (3) the three cases that she cites offer no support for her conclusion.

### 1. The WCDA never had an opportunity to offer evidence or testimony about the alleged pattern because it was not an issue before the trial court.

While Justice Dauphinot cites "observed patterns" that "show a course of conduct at odds with constitutional mandates and fundamental fairness" as the basis for her dissent, this supposed pattern was not a controversy in issue before the trial judge.[62]  There was no allegation before the trial judge of any such pattern.[63]  Rather, the only issues before the trial court were (1) what had happened; and (2) why did it happen.[64]  The trial court never asked for, heard, or received any evidence about any pattern of misconduct by the WCDA.[65]  Therefore, the WCDA has never been afforded any opportunity to offer testimony or evidence rebutting any such pattern.  Appellate courts are not evidentiary courts.[66]  When an appellate court needs additional evidence to decide a point, the appropriate

---

[62]    *See* Attachment A, IV-V R.R. (motion for mistrial and hearing on habeas application).
[63]    *Id.*
[64]    *Id.*
[65]    *Id.*
[66]    *See, e.g., In the Interest of M.C.B.,* 400 S.W.3d 630, 633 (Tex. App.—Dallas 2013, no pet. history) (explaining that appellate courts do not take testimony or receive evidence).

remedy is to abate the appeal and refer the case for an evidentiary hearing in a trial court.[67]

Since an alleged pattern was not an issue before the trial court span the appellate court did not abate the appeal and remand for such a determination, the WCDA never had the opportunity to offer any evidence to refute the erroneous claim. To state such a serious conclusion as fact in the dissent of a published opinion when there has been no evidentiary hearing before a trial court on the issue is completely contrary to the tenets of judicial fairness, the Texas Rules of Appellate Procedure, and the proscription against issuing advisory opinions.[68] This further demonstrates Justice Dauphinot's antagonism to the WCDA: she makes a sweeping advisory pronouncement without the WCDA having an opportunity to rebut that pronouncement.

### 2. Justice Dauphinot cites three opinions out of thousands of cases handled by the WCDA.

For the supposed pattern that she has observed, Justice Dauphinot cites three cases handled by the WCDA. These cases that she cites span

---

[67]    Tex. R. App. P. 44.4.

[68]    Tex. R. App. P. 47.1 (limiting an appellate court decision to the issues "raised and necessary to final disposition of the appeal); *see also Garrett v. State*, 749 S.W.2d 784, 803 (Tex. Crim. App. 1988) (explaining that "judicial power does not include the power to issue advisory opinions" which result "when a court attempts to decide an issue that does not arise from an actual controversy capable of a final adjudication.") *overruled on other grounds*, *Malik v. State*, 953 S.W.2d 234 (Tex. Crim. App. 1997).

a period of over five years.[69]  During those five years, the WCDA has handled thousands of criminal cases, multiple scores of which have gone before this honorable Court of Appeals.  The lack of an evidentiary hearing on such an important issue is further highlighted when Justice Dauphinot attempts to discern a pattern of misconduct out of three cases in six years out of thousands of cases handled.  Even if the three cases she cited supported her proposition (which they do not), three cases in five years is no substitute for an evidentiary hearing on such an important question.

### 3. The three cases that Justice Dauphinot cites do not support the pattern she alleges.

The cases cited by Justice Dauphinot fail to establish any pattern.  First, Justice Dauphinot cites *Dabney v. State*, [70] an unpublished memorandum opinion that was released on October 16, 2014.  The State currently has a pending application for discretionary review before the Court of Criminal Appeals on *Dabney*.[71]  While Justice Dauphinot, who authored the *Dabney* opinion, disputed the trial court's decision, the trial

---

[69]    *Roberson,* 2015 WL 148476 at *11 (Dauphinot, J., dissenting).
[70]    No. 02-12-00530-CR, 2014 WL 5307178, at *7–9 (Tex. App.—Fort Worth Oct. 16, 2014, pet. filed) (mem. op., not designated for publication).
[71]    *See* THE STATE'S PETITION FOR DISCRETIONARY REVIEW, *Dabney v. State*, No. PD-1515-14 (Tex. Crim. App. Nov. 12, 2014), available at http://www.search.txcourts.gov/SearchMedia.aspx?MediaVersionID=59aad18c-9d6a-4018-8b70-6fbb32cd8db1.

22

judge had admitted the evidence as rebuttal evidence.[72]  Judge Robert

Brotherton, an experienced trial judge who presided over the case, did not

believe that the WCDA had engaged in any discovery violation as

evidenced by his decision to admit the evidence.[73]  Additionally, Justice

Walker dissented in *Dabney* and would have affirmed the admission of the

evidence as rebuttal evidence.[74]  So, Justice Dauphinot cites to *Dabney*, an

opinion that she authored, for part of her allegation that the WCDA

engages in discovery abuses, even though Judge Brotherton in *Dabney*

found no such discovery abuse and Justice Walker discerned no such

abuse.  Furthermore, the State questions the fairness of using an opinion

where the asserted issue is the subject of a pending petition for

discretionary review.[75]

Second, Justice Dauphinot cites *Pitman v. State*.[76]  In *Pitman,* this

Court affirmed the judgment and sentence finding that the appellant had

failed to satisfy the second and third *Brady* prongs.[77]  The portion of the

opinion that Justice Dauphinot is apparently citing to – dealing with the

---

[72]     Attachment B, VI R.R. at 21, 33.
[73]     *Id.*
[74]     *Dabney*, 2014 WL 5307178 at *10-11 (Walker, J., dissenting).
[75]     *See* THE STATE'S PETITION FOR DISCRETIONARY REVIEW, *Dabney v. State*, No. PD-1515-14  (Tex. Crim. App. Nov. 12, 2014), available at
http://www.search.txcourts.gov/SearchMedia.aspx?MediaVersionID=59aad18c-9d6a-4018-8b70-6fbb32cd8db1
[76]     *Pittman v. State*, 372 S.W.3d 261, 270 (Tex. App.—Fort Worth 2012, pet ref'd).
[77]     *Id.*

WCDA's policy concerning CPS records – was "not necessary to the disposition of this appeal" and, therefore, mere dicta.[78] Furthermore, the position taken by the WCDA – that the CPS records should be subpoenaed and presented to the trial court for in camera review because of the confidentiality of CPS records – is now supported by 39.14(a) of the Code of Criminal Procedure excluding records deemed confidential under Section 264.408 of the Family Code.[79] This statutory confidentiality recognizes the unique attorney-client relationship the Civil Division of the District Attorney's Office has with the Department of Family and Protective Services and how inappropriate imputing all such attorney-client knowledge to the criminal prosecutor in a prosecution of an opposing party in a child protective services case would be. Therefore, not only is the portion of *Pitman* that Justice Dauphinot cites dicta (which in itself would be inappropriate to use as evidence of a pattern), but the issue of attorney/client privilege between CPS and WCDA in *Pitman* is now

---

[78]     Id. at 270.
[79]     Tex. Code Crim. Proc. art. 39.14 (West Suppl. 2014) ("Subject to the restrictions provided by Section 264.408 Family Code…") & Tex. Fam. Code Ann. § 264.408 (West 2014) ("[CPS documents] may *only* be disclosed for purposes consistent with this chapter."; the only exceptions to this confidentiality for a prosecuting attorney are "as needed to provide services under this chapter" or for a "video recording of an interview of a child") (emphasis added)

24

supported by statute due to the amendment of 39.14(a) of the Code of Criminal Procedure.[80]

Third, Justice Dauphinot cites *Juarez v. State*,[81] another unpublished, memorandum opinion. The *Juarez* case was handled under the previous District Attorney, Barry Macha.[82] While on appeal the appellant claimed lack of notice of an extraneous offense, this Court overruled the point of error for lack of preservation.[83] So, in citing *Juarez*, Justice Dauphinot was citing to an appellant's point of error that was neither preserved nor ruled upon as part of her "observable pattern" of discovery abuses.[84] Incredibly, the fact that the merits of the case were not ruled upon by this Court does not deter Justice Dauphinot from seeing her pattern of abuse from a mere appellant point that was never reached.[85]

For her alleged pattern, Justice Dauphinot has cited two cases where the Court did not find a discovery violation.[86] The third case she cites – *Dabney* – currently has a petition for discretionary review pending before

---

[80]    *Id.*

[81]    No. 02-08-00167-CR, 2009 WL 1564926, at *1 & n.2 (Tex. App.—Fort Worth June 4, 2009, no pet.) (mem. op., not designated for publication).

[82]    *Id.*

[83]    *Id.*

[84]    *Id.*

[85]    *Id.*

[86]    *Pitman*, 372 S.W.3d at 268-70 & *Juarez v. State*, No. 02-08-00167-CR, 2009 WL 1564926, at *1 & n.2 (Tex. App.—Fort Worth June 4, 2009, no pet.) (mem. op., not designated for publication)

the Court of Criminal Appeals.[87]  Also, one of these three cases was under a previous District Attorney.[88]  No fair observer would discern any pattern from these three cases.  That Justice Dauphinot sees a pattern in them reveals that she has such a high degree of antagonism toward the WCDA that she will see a pattern where none exists.  This lack of pattern, alone, would be enough to demonstrate Justice Dauphinot's inability to be impartial in judging cases involving the WCDA.

**III.  The close proximity in time between the WCDA prevailing on its motion for en banc reconsideration on the *Joe Johnson* appeal and this dissent suggests the basis for Justice Dauphinot's antagonism toward the WCDA.**

The WCDA's successful motion for en banc reconsideration in *Johnson v. State* in October 2014 in which this Court withdrew Justice Dauphinot's memorandum opinion would appear, to an impartial observer, as a motivation for Justice Dauphinot's antagonism toward the WCDA.

The memorandum opinion authored by Justice Dauphinot in *Johnson v. State* made many factual assertions that were not supported by the record.[89]  The memorandum opinion's reasoning was premised upon a

---

[87]    *See* THE STATE'S PETITION FOR DISCRETIONARY REVIEW, *Dabney v. State*, No. PD-1515-14  (Tex. Crim. App. Nov. 12, 2014), available at http://www.search.txcourts.gov/SearchMedia.aspx?MediaVersionID=59aad18c-9d6a-4018-8b70-6fbb32cd8db1

[88]    *Juarez*, 2009 WL 1564926 at *1.

[89]    *Johnson v. State*, No. 02-11-00253-CR, 2013 WL 531079 (Tex. App.—Fort Worth Feb. 14, 2013) (mem. op, not designated for publication) (*Johnson I*), opinion

26

false open-door theory not supported in the record.[90] Because the reversal would have caused a child rape victim to re-testify, the WCDA had no choice but to file a motion for en banc reconsideration which detailed the many factual errors that served as the premise of the false open-door theory.[91]

On October 9, 2014, a majority of this Court agreed, thereby withdrawing Justice Dauphinot's opinion, and affirming the conviction.[92] Justice Dauphinot dissented from the majority decision.[93]

The State believes that to an impartial observer, it would appear to be more than a coincidence that following a majority of this Court rectifying the false open-door premise that formed the basis of her open-door theory in *Johnson v. State,* Justice Dauphinot has since developed and expressed such animus toward the WCDA where she is willing to ignore the trial judge's credibility determination, ignore binding precedent, and discern a pattern of misconduct where none exists.[94]

---

withdrawn and superseded by *Johnson v. State*, No. 02-11-00253-CR, 2014 WL 5583345, at *1 (Tex. App.—Fort Worth Oct. 9, 2014) (en banc) (*Johnson II*); MOTION FOR EN BANC RECONSIDERATION, *Johnson v. State*, No. 02-11-00253-CR (Tex. App.—Fort Worth Feb. 22, 2013).

[90]    *Johnson I*, 2013 WL 531079, at *1.
[91]    *Johnson II,* 2014 WL 5583345, at *1.
[92]    *Id.*
[93]    *Id.* at *5.
[94]    *Compare Johnson II*, 2014 WL 5583345, released Oct. 9, 2014 *with Roberson,* 2015 WL 148476 (Dauphinot, J., dissenting), released Jan. 8, 2015.

Any party to an appeal has a right under T.R.A.P. 49.7 to file for a motion for en banc rehearing when the party believes the opinion is founded on false premises and is contrary to the trial record in the case. A party should be able to exercise that right without fear of reprisal by the author of the opinion. The State believes that an impartial observer, reading Justice Dauphinot's dissent in *Roberson* and the high level of antagonism that it expresses toward the WCDA just a few months after the WCDA prevailing on its motion for en banc reconsideration in *Johnson*, would question Justice Dauphinot's ability to be a fair and impartial judge.

**Conclusion**

The State has shown that Justice Dauphinot has a high degree of antagonism toward the WCDA that she carries with her from case-to-case. The State has shown that "a reasonable member of the public at large, knowing all the facts in the public domain concerning the judge and the case, would have a reasonable doubt that [Justice Dauphinot] is actually impartial" and that "a reasonable person, knowing all the circumstances involved, would harbor doubts as to the impartiality of [Justice Dauphinot]." The deep-seated antagonism that Justice Dauphinot holds affects her ability to dispassionately apply the settled law from the Court of Criminal

Appeals, her ability to defer to credibility determinations of the trial judge, and her ability to distinguish between a ruling on a motion in limine and an evidentiary ruling. In previous opinions she authored, Justice Dauphinot has cited and applied the proper law in these areas; yet, when the WCDA is a party, she now applies a different set of rules.[95]

Justice Dauphinot has expressed an attitude so resistant to fair and dispassionate inquiry as to cause a reasonable member of the public to question the objective nature of her rulings in cases involving the WCDA. Since the State has a due process right to have a neutral and detached hearing body or officer, and since that due process right would be violated by Justice Dauphinot sitting on these panels, recusal is proper.

*Prayer*

The State prays Justice Dauphinot recuse herself from the three above-captioned cases. Absent a self-recusal, the State prays that this en banc Court enter a finding that Justice Dauphinot should be recused.

---

[95] *Compare BNSF Railway Co.*, 434 S.W.3d at 699 ("The granting of a motion in limine is not a ruling on the admissibility of evidence and does not preserve error."); *Stevenson*, 993 S.W.2d at 867 ("Because a decision of the court of criminal appeals is binding precedent, we are compelled to comply with its dictates."); *Jordy*, 969 S.W.2d at 531 ("the appellate court should afford almost total deference to the trial court's fact findings); *with Roberson*, 2015 WL 148476 at (Dauphinot, J., dissenting) (where she claims a ruling on a limine is an evidentiary ruling, she fails to engage and apply the Court of Criminal Appeals precedent to the issue at hand, and she fails to defer to the trial judge's credibility determination of Investigator Cavinder).

29

Respectfully submitted,

/s/Maureen Shelton
**Maureen Shelton**
Criminal District Attorney
Wichita County, Texas
State Bar No. 00786852
Maureen.Shelton@co.wichita.tx.us

/s/John Gillespie
**John Gillespie**
First Asst. Criminal District Attorney
Wichita County, Texas
State Bar No. 24010053
John.Gillespie@co.wichita.tx.us

900 Seventh Street
Wichita Falls, Texas 76301
(940) 766-8113 phone
(940) 766-8177 fax

## Certificate of Compliance

I certify that this document contains 6,629 words, counting all parts of the document except those excluded by Tex. R. App. P. 9.4(i)(1). The body text is in 14 point font, and the footnote text is in 12 point font.

/s/Maureen Shelton
**Maureen Shelton**

## Certificate of Service

I do certify that on January 21, 2015, a true and correct copy of the above document has been served electronically to Michael F. Payne (attorney for Antonio Leija, Jr.) at michaelfpayne@gmail.com.

/s/Maureen Shelton
**Maureen Shelton**

## Certificate of Conference

A conference was held on January 20, 2015 by telephone with Michael F. Payne (attorney for Antonio Leija, Jr.) on the merits of this motion, and he was not able to confer whether or not he was opposed without speaking with his client first.  He has not yet responded.

/s/Maureen Shelton
**Maureen Shelton**

FILE COPY



# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-13-00319-CR

MICHAEL OLIVER SMITH                                  APPELLANT

V.

THE STATE OF TEXAS                                    STATE

------------

FROM THE 78TH DISTRICT COURT OF WICHITA COUNTY
TRIAL COURT NO. 52,047-B

------------

### NO. 02-13-00473-CR

ANTONIO LEIJA, JR.                                    APPELLANT

V.

THE STATE OF TEXAS                                    STATE

------------

FROM THE 78TH DISTRICT COURT OF WICHITA COUNTY
TRIAL COURT NO. 52,563-B

------------

FILE COPY

**NO. 02-13-00482-CR**

KURLEY JAMES JOHNSON                                        APPELLANT

V.

THE STATE OF TEXAS                                                    STATE

------------

FROM THE 89TH DISTRICT COURT OF WICHITA COUNTY
TRIAL COURT NO. 53,445-C

------------

# ORDER

------------

Currently pending before this court in each of the above referenced causes is a "State's Motion to Recuse the Hon. Justice Lee Ann Dauphinot," filed January 21, 2015, requesting the recusal of Justice Lee Ann Dauphinot in each cause under Texas Rule of Appellate Procedure 16.

Rule 16 states that the grounds for recusal are the "same as those provided in the Rules of Civil Procedure." Tex. R. App. P. 16.2; *see also* Tex. R. Civ. P. 18a, 18b. Rule 18b(b) of the Texas Rules of Civil Procedure identifies the grounds for recusal. Tex. R. Civ. P. 18b(b); *McCullough v. Kitzman*, 50 S.W.3d 87, 88 (Tex. App.—Waco 2001, pet. denied) (order). Rule 18b(b)(1) provides that a judge must recuse himself or herself in a proceeding in which the judge's

2

impartiality might reasonably be questioned. Tex. R. Civ. P. 18b(b)(1). The State's motions challenge the impartiality of Justice Dauphinot under this rule.

Rule 16.3(b) of the Texas Rules of Appellate Procedure prescribes the procedure to be followed for recusal of an appellate justice or judge:

> Before any further proceeding in the case, the challenged justice or judge must either remove himself or herself from all participation in the case or certify the matter to the entire court, which will decide the motion by a majority of the remaining judges sitting en banc. The challenged justice or judge must not sit with the remainder of the court to consider the motion as to him or her.

Tex. R. App. P. 16.3(b).

Pursuant to the procedure set forth in rule 16.3(b), upon the filing of the recusal motions and prior to any further proceedings in these appeals, Justice Dauphinot considered the motions in chambers. *Id*. Justice Dauphinot found no reason to recuse herself and certified the matter in writing to the remaining members of the court en banc. *See id*.; *McCullough*, 50 S.W.3d at 88. This court then followed the accepted procedure set out in rule 16.3(b). Tex. R. App. P. 16.3(b); *Manges v. Guerra*, 673 S.W.2d 180, 185 (Tex. 1984); *McCullough*, 50 S.W.3d at 88. A majority of the remaining justices of the court could not agree on a decision, so that fact was certified to the Chief Justice of the Supreme Court. The Chief Justice temporarily assigned former Justice Rebecca Simmons as a visiting justice to sit with the court of appeals to consider the motions. *See* Tex. R. App. P. 41.2(b).

The visiting justice then met with the six remaining justices to deliberate and decide the motions to recuse Justice Dauphinot by a vote of a majority of the justices. Justice Dauphinot did not sit with the other members of the court when her challenges were considered. *See* Tex. R. App. P. 16.3(b); *McCullough*, 50 S.W.3d at 88. The determination of whether recusal was necessary was made on a case-specific, fact-intensive basis. *See McCullough*, 50 S.W.3d at 89; *Williams v. Viswanathan*, 65 S.W.3d 685, 688 (Tex. App.—Amarillo 2001, no pet.) (order).

The en banc court, Justice Dauphinot not participating, has carefully examined the motions and the records as to the allegations pertaining to Justice Dauphinot. The majority of the remaining justices have concluded that the motions should be denied. *See* Tex. R. App. P. 16.2; Tex. R. Civ. P. 18b(b). Accordingly, the State's motion to recuse Justice Dauphinot in each of the above referenced causes is denied.

DATED February 26, 2015.

PER CURIAM

EN BANC; with REBECCA SIMMONS (Former Justice, Sitting by Assignment).

DAUPHINOT, J., not participating.

LIVINGSTON, C.J.; WALKER and GABRIEL, JJ., would grant.

4

ACCEPTED
02-13-00473-CR
SECOND COURT OF APPEALS
FORT WORTH, TEXAS
2/27/2015 10:24:40 AM
DEBRA SPISAK
CLERK

**No. 02-13-00473-CR**

Court of Appeals
Second District of Texas
Fort Worth

**Antonio Leija, Jr.,**
Appellant

v.

**State of Texas,**
Appellee

On Appeal From No. 52,563-B in the 78th District Court of Wichita County,
Texas, Hon. Judge Fudge Presiding

**State's Unopposed Motion to Stay Proceedings**

**To the Honorable Justices of this Court:**

This court has recently issued an order denying *State's Motion to Recuse the Hon. Justice Dauphinot*. The State will promptly file a Petition for Discretionary Review to review this order, as permitted by the Texas Rules of Appellate Procedure 16.3(c) and 68.1. While the State has 30 days to file this petition,[1] it plans to file it next week.

---

[1]     Tex. R. App. P. 68.2(a).

1

The State prays that this court stay further proceedings in this case and not render an opinion until the Court of Criminal Appeals has acted on the State's Petition for Discretionary Review. This motion is made in good faith, as three out of seven justices sitting en banc would have granted the State's motion to recuse.

Respectfully submitted,

/s/Maureen Shelton
**Maureen Shelton**
Criminal District Attorney
Wichita County, Texas
State Bar No. 00786852
Maureen.Shelton@co.wichita.tx.us

/s/John Gillespie
**John Gillespie**
First Asst. Criminal District Attorney
Wichita County, Texas
State Bar No. 24010053
John.Gillespie@co.wichita.tx.us

900 Seventh Street
Wichita Falls, Texas 76301
(940) 766-8113 phone
(940) 766-8177 fax

## Certificate of Compliance

I certify that this document contains 119 words, counting all parts of the document except those excluded by Tex. R. App. P. 9.4(i)(1). The body text is in 14 point font, and the footnote text is in 12 point font.

/s/Maureen Shelton
**Maureen Shelton**

## Certificate of Service

I do certify that on February 27, 2015, a true and correct copy of the above document has been served electronically to Michael Payne (attorney for Antonio Leija) at michaelfpayne@gmail.com.

/s/Maureen Shelton
**Maureen Shelton**

## Certificate of Conference

I certify that this motion was discussed with Michael Payne (attorney for Antonio Leija) in person on February 27, 2015, and that he is unopposed to this motion.

/s/Maureen Shelton
**Maureen Shelton**