Court of Appeals
Fourth Court of Appeals District of Texas
San Antonio




# OPINION

Nos. 04-10-00672-CR & 04-10-00710-CR

**EX PARTE** John William **COLEMAN**

From the 198th Judicial District Court, Kimble County, Texas
Trial Court Nos. 2010-DCR-0132 and 2010-DCR-0133
The Honorable M. Rex Emerson, Judge Presiding

Opinion by:    Steven C. Hilbig, Justice

Sitting:    Catherine Stone, Chief Justice
Rebecca Simmons, Justice
Steven C. Hilbig, Justice

Delivered and Filed:  April 27, 2011

AFFIRMED

The State of Texas filed two indictments against John William Coleman, each charging him with multiple counts of aggravated sexual assault and indecency with a child.  The cases were tried together, but the trial ended when the court declared a mistrial at Coleman's request because of statements made by the prosecutor.  Coleman filed an application for a writ of habeas corpus in each case, asserting his double jeopardy rights would be violated by a second trial. The trial court denied the requested relief and Coleman perfected appeals.[1]  We affirm the trial court's orders.

---

[1] The cases have been consolidated on appeal.

**BACKGROUND**

Coleman's motion for a mistrial was made on the second day of the trial, during the testimony of defense witness Colleen Coleman. The State apparently had rested, and statements in the record suggest Colleen was the tenth defense witness.[2] Colleen, appellant's wife, testified she was a caseworker for Child Protective Services involved in termination cases. She told the jury she did not believe the defendant to be a child molester, he had a sensitive nature, was "good" with children, had a good reputation "for being safe around children" in their community, and "hundreds" of people believe he could not have committed the crimes. During cross-examination, the prosecutor questioned Colleen about her familiarity with "child forensic interviews." After a few preliminary questions, the prosecutor asked:

> Q. And correct me if I'm wrong, but those are kind of designed to ferret out any kind of allegation. It might not be a sexual abuse allegation or they're trying to get straight to the truth. Right?

The defense objected that the question violated rules 401 and 403 of the Texas Rules of Evidence and violated his right of confrontation under *Crawford*.[3] At the bench, defense counsel argued:

> . . . it's trying to "ferret out," it's basically trying to imply the fact that they went forward is some sort of evidence of guilt. These people, they wouldn't go forward with this evidence unless there was some sort of guilt, and if I don't have a chance to cross-examine those witnesses, my client's *Crawford* rights have been violated.

The trial court ultimately ruled that the State could ask "procedural questions" about the interviews, but could not go into the substance of the interviews without producing the "forensic examiner" in the courtroom. The prosecutor again questioned Colleen about "forensic interviews" and asked the purpose of conducting such an interview. The defense objected and the State asked a different question.

---

[2] The appellate record is sparse. We have not been provided a complete record of the trial and have only excerpts from the testimony of two witnesses. No evidence was presented at the hearing on the writs of habeas corpus.

[3] *Crawford v. Washington*, 541 U.S. 36 (2005).

Q.  Okay, and at that stage a — based on a forensic interview, is it not true that CPS will substantiate a case or choose not to move forward?

[objection overruled and witness requests the question be repeated]

Q.  My question is, and I'm not trying to — and let me try to say it as clear as I know how. Is it not true that child forensic interviews are the way law enforcement are able to know whether or not a child is sexually abused?  Is that not true?

[objection overruled]

A.  It's a tool that they use to go forward with a decision.  It's not a way for them to know for sure.  It's a tool they use to see if they can make a decision regarding whether this man is guilty or not --

Q.  Okay.

A.  -- or this person.

Q.  Okay, and it's a pretty valuable tool for CPS.  Correct"

A.  Yes.

The State passed the witness and the defense questioned her about the differences between the burdens of proof in civil and criminal proceedings.  On re-cross examination, the State returned to the subject of forensic interviews.

Q.  [State]: Do y'all ever go to court and show the forensic video?

A.  At the — I have not been in a case that did that, no sir.

Q.  Okay. You understand that it would be improper under the Rules of Evidence for the State to show this to the jury because it's all hearsay. We're not allowed --

Defense:  Your Honor, I object. Counsel approach?

[at the bench]

State:  Your Honor, the Defense counsel has specifically said that the State has got the forensic interview, and if they wanted to make it available, and that creates a -- . . . [Y]ou created the impression that we were withholding evidence. We're --

Court: He's got a right to respond to that. But you need to word your question such that you're not testifying when you're doing it.

[in open court]

Q. [State]: Do you know just — this is just if you know, only if you know. Do you know whether or not the State of Texas is allowed to show in District Court a forensic video?

Defense: Your Honor --

Q. Do you?

Defense: I object. May counsel approach?

Court: It's a yes or no answer.

Defense: Okay. Your Honor, I object on the basis of she's not a legal expert, and I — the State certainly is permitted — I mean, there's Rules of Evidence, and it's just improper to ask this witness, who's not a lawyer, questions about legal procedure that she may or may not know, and I mean --

State: I do — I hear the Defense --

Defense: I'd request a hearing outside the presence of the jury on this matter. He's basically implying that he has certain evidence that he's not brought forward.

State: *I'm not implying. I'm saying it. We have certain evidence we have not shown, the forensic interviews. We are not allowed under the Rules of Evidence, and this attorney knows it.*[4]

The judge released the jury for lunch and heard arguments before taking a recess. During the arguments, the State asserted the defense opened the door to his comments by creating a false impression with the jury that the State could show the video interview. At one point the court commented: "The Defense opened the door. Okay? There's no doubt about that, but you're going to have to elicit testimony through your witnesses." The State indicated it had no other questions for Colleen and the court ruled it would instruct the jury to disregard the prosecutor's

---

[4] These statements form the basis of Coleman's complaint.

comments. Defense counsel then moved for a mistrial based on the "blatant" misconduct of the prosecutor. The court stated it would rule on the motion after the lunch recess.

Upon return from the lunch recess and without any additional argument, the court granted a mistrial. When the trial court began to discuss a date for retrial, Coleman objected to a retrial, and the court said it would consider the matter later. The State filed a trial brief addressing the double jeopardy question and attaching the trial excerpts. The trial court later issued an order in which it ruled that "[t]here is no evidence in this case that the prosecutor intentionally tainted the case on trial to manipulate the defendant into asking for a mistrial and the mere showing that the prosecutor recklessly engaged in conduct that required a mistrial is not sufficient to bar a retrial." The court set a trial date for the cases.

Coleman filed an application for a writ of habeas corpus in each case. In the applications, Coleman asserted that the trial "was not going well for the prosecution" and the prosecutor "intentionally, knowingly and recklessly goaded" Coleman into requesting a mistrial in order to "have another opportunity to retry" him. The court considered the pleadings during a non-evidentiary hearing, and denied all relief. In doing so, the court reiterated its earlier ruling that the prosecutor did not intentionally goad the defense into requesting a mistrial.

### APPLICABLE LAW

In *Ex parte Lewis*, 219 S.W.3d 335 (Tex. Crim. App. 2007), the Texas Court of Criminal Appeals held that the standard announced in *Oregon v. Kennedy*, 456 U.S. 667 (1982), for review of double jeopardy claims after mistrial based on prosecutorial misconduct would apply to claims of double jeopardy under the Texas Constitution. *Lewis*, 219 S.W.3d at 371. Accordingly, when a claim is made under either the United States or Texas constitution, a reviewing court must determine whether a defendant successfully moved for a mistrial because

the prosecutor "engaged in conduct that was 'intended to provoke the defendant into moving for a mistrial.'" *Id*. at 336 (*citing Kennedy*, 456 U.S. at 679). The Supreme Court in *Oregon v. Kennedy* stressed that the exception to the general rule that double jeopardy protections do not bar a retrial when the defense requested a mistrial is "narrow." 456 U.S. at 673. "Prosecutorial conduct that might be viewed as harassment or overreaching, even if sufficient to justify a mistrial on defendant's motion, therefore, does not bar retrial absent intent on the part of the prosecutor to subvert the protections afforded by the Double Jeopardy Clause." *Id.* at 675-76.

The Court of Criminal Appeals subsequently discussed the *Oregon v. Kennedy* standard in *Ex parte Masonheimer*, 220 S.W.3d 494 (Tex. Crim. App. 2007). In *Masonheimer*, the defendant had been subjected to two previous trials, each of which was terminated by a defense-requested mistrial because the prosecution failed to produce *Brady* material. The defendant filed a pretrial application for a writ of habeas corpus, claiming his double jeopardy rights would be violated by a third trial. The trial court granted relief, stating that jeopardy had attached and retrial was barred by double jeopardy. *Id.* at 505. However, the court made no finding as to whether the prosecutor intended to provoke a mistrial. *Id*. The Court of Criminal Appeals, noting it must review the evidence in the light most favorable to the court's ruling, affirmed the trial court. *Id.* at 506, 508-09. In doing so, it did not rely on the express holding in *Oregon v. Kennedy* that the applicant must demonstrate the prosecutor engaged in conduct with the intent to provoke the defense to request a mistrial. Rather, the majority examined cases cited with approval in *Oregon v. Kennedy* in which relief had been granted because the prosecution acted with intent to avoid a probable acquittal. *Id.* at 507-08. Ultimately, the court stated:

> Keeping in mind that we are required to view the evidence in the light most favorable to the trial court's ruling that prosecuting appellee a third time is jeopardy-barred, we are constrained to decide that the extensive portions of the record set out in this opinion support a finding that appellee's mistrial motions

were necessitated primarily by the State's "intentional" failure to disclose exculpatory evidence that was available prior to appellee's first trial with the specific intent to avoid the possibility of an acquittal. Under *Oregon v. Kennedy,* this deliberate conduct, accompanied by this specific *mens rea,* bars a retrial.

*Id.* (footnote omitted).

We therefore review the evidence in the light most favorable to the trial court's ruling. *Id*. at 507. A retrial is not barred by double jeopardy unless the prosecutor engaged in the conduct with the intent to provoke the defense to request a mistrial or the prosecutor intentionally engaged in the conduct with the intent to avoid an acquittal. *Lewis*, 219 S.W.3d at 336; *Masonheimer*, 220 S.W.3d at 507-08. The burden is on the applicant to prove his allegations by a preponderance of the evidence. *Ex parte Chandler*, 182 S.W.3d 350, 353 n. 2 (Tex. Crim. App. 2005) The applicant also has the burden to bring before the court a record sufficient to prove his allegations. *Id.* In a habeas proceeding, the trial court may take judicial notice of earlier proceedings before the same judge and involving the same parties. *Ex parte Turner*, 612 S.W.2d 611, 612 (Tex. Crim. App. 1981). Appellate review of the court's ruling is not limited to the evidence adduced at the habeas hearing, but may include the record as it existed before the trial court at the time of the hearing. *State v. Ybarra*, 942 S.W.2d 35, 36-37 (Tex. App.—Corpus Christi 1996), *pet. dism'd*, 977 S.W.2d 594 (1998).

### DISCUSSION

It is well-settled that the prosecutor should not refer to evidence outside the record during argument or engage in sidebar remarks. *See, e.g*., *Borjan v. State*, 787 S.W.2d 53, 57 (Tex. Crim. App. 1990) ("a prosecuting attorney is permitted in his argument to draw from the facts in evidence all inferences which are reasonable, fair and legitimate, but he may not use the jury argument to get before the jury, either directly or indirectly, evidence which is outside the record"); *Stein v. State*, 492 S.W.2d 548, 551 (Tex. Crim. App. 1973) ("Recently, this Court has

been faced with numerous cases where improper arguments and sidebar remarks by the prosecutor have forced us to reassert the critical importance of convicting an accused only upon that evidence presented, without attempting to inflame or prejudice the minds of the jurors."); *Fant-Caughman v. State*, 61 S.W.3d 25, 31 (Tex. App.—Amarillo 2001, pet. ref'd) (holding prosecutor's statement during closing argument that he had "a lot" of witnesses in addition to the four who testified constituted reversible error). Clearly, the prosecutor's conduct in this case was improper and should not be tolerated.

However, we affirm the trial court's orders because Coleman has not met his burden of providing a sufficient record to prove his allegations that the prosecutor intentionally goaded him into requesting a mistrial because the trial "was not going well for the prosecution" and the prosecutor sought to avoid an acquittal. Coleman provided only excerpts from the testimony of two witnesses, and one of them testified Coleman signed a "confession." Based on the record before us, we cannot conclude the trial "was not going well for the prosecution."

Moreover, viewing the record before us in the light most favorable to the trial court's ruling, we find some support for the finding that the prosecutor did not intentionally taint the case to manipulate the defendant into asking for a mistrial. During the bench conference before the court declared a mistrial, the State asserted, and the trial court concurred, that the defense opened the door to questions concerning the existence of a forensic interview. Although the record before us does not demonstrate that the defense opened that door, the record suggests it was the intent of the prosecutor to respond, albeit improperly, to the perceived actions of defense counsel. The impropriety of the prosecutor's response was remedied by the mistrial. Double jeopardy "is neither another form of due process protection ensuring the propriety of the criminal trial nor a means to protect against outrageous government conduct." *Lewis*, 219 S.W.3d at 358

(quoting *People v. Batts*, 68 P.3d 357, 377 n. 23 (Cal. 2003), *cert. denied*, 540 U.S. 1185 (2004)). Prosecutorial misconduct justifying a mistrial on defendant's motion does not bar retrial unless the prosecutor intended to subvert the protections afforded by the Double Jeopardy Clause. *Kennedy*, 456 U.S. at 675-76. Here, Coleman has failed to prove the prosecutor acted with the requisite intent to provoke a mistrial. The trial court did not abuse its discretion in denying the requested relief.

Coleman urges this court to establish a new standard for reviewing claims of double jeopardy when a mistrial is based on prosecutorial misconduct. He suggests that knowing or reckless conduct, as opposed to intentional conduct, should trigger double jeopardy protections. We decline his invitation. The United States Supreme Court has made it quite clear that the exception to the rule that double jeopardy does not bar a retrial when a defense-requested mistrial terminates the first trial is "narrow." *Kennedy*, 456 U.S. at 673. The Court of Criminal Appeals has decided the standard announced in *Oregon v. Kennedy* applies to the double jeopardy protections afforded by our state constitution. *Lewis*, 219 S.W.3d at 337. Any decision to expand this narrow exception is left to those courts.

## CONCLUSION

We affirm the orders of the trial court denying habeas corpus relief.

Steven C. Hilbig, Justice

PUBLISH