

# Fourth Court of Appeals
## San Antonio, Texas

### MEMORANDUM OPINION

No. 04-17-00249-CR

**EX PARTE COBY STEWART**

From the County Court at Law No. 15, Bexar County, Texas
Trial Court No. 486896
The Honorable Robert Behrens, Judge Presiding

Opinion by:      Rebeca C. Martinez, Justice

Sitting:          Rebeca C. Martinez, Justice
                 Luz Elena D. Chapa, Justice
                 Irene Rios, Justice

Delivered and Filed:  April 4, 2018

AFFIRMED

Coby Stewart appeals from the trial court's denial of his request for habeas corpus relief barring a retrial in his DWI case. Stewart asserts the State's intentional misconduct forced him to move for the mistrial; therefore, retrial is barred by double jeopardy. We affirm the trial court's order.

### BACKGROUND

Stewart was arrested and charged with driving while intoxicated with a blood alcohol content of 0.15 or higher. Stewart's blood was drawn by a nurse at the Bexar County Central Magistrate, who subsequently left Bexar County employment. Stewart filed a pre-trial motion for discovery seeking the State's compliance with its duty of disclosure under article 39.14 of the Code

of Criminal Procedure, including the disclosure of any expert witnesses per article 39.14(b). TEX. CODE CRIM. PROC. ANN. art. 39.14 (West Supp. 2017).

Nine months later, Stewart appeared for his twelfth trial setting and announced ready for trial. Before the jury was sworn, Stewart's defense counsel informed the trial court that she had not received a witness list from the State and would be moving to exclude any expert witness testimony offered by the State. The trial court's file also did not contain a State's witness list. The State then produced a file-stamped witness list from its work-product file that it represented was faxed to defense counsel several months earlier. Stewart's counsel disputed receiving the fax and the State's confirmation sheet did not list counsel's fax number, referring to it as "unknown." The witness list identified the nurse as "Elva Villarreal, Licensed Vocational Nurse, Bexar County Central Magistrate" and provided that address. After an in-camera inspection of the State's work-product file, performed at defense counsel's request, the prosecutors revealed that Ms. Villarreal was no longer employed by Bexar County and they had not had any contact with her for several months. After defense counsel renewed her objection to the lack of notice, the prosecutors stated they did not intend to call the nurse as a witness and planned to present the blood evidence through the toxicologist. However, the trial court indicated that it would require the nurse to testify before it would admit the blood draw evidence.[1] At that time, the prosecutors admitted they did have Ms. Villarreal's current contact information and would attempt to contact her to appear for trial the next day. The nurse's current contact information was not disclosed to the defense at that time. The jury was selected and sworn, and opening statements were presented.

---

[1] The trial court later acknowledged it was incorrect in stating the blood draw evidence was not admissible without the nurse's testimony. *See State v. Guzman*, 439 S.W.3d 482, 488-89 (Tex. App.—San Antonio 2014, no pet.). However, that mistake is not relevant to the appellate issue before this court.

The next morning, before any evidence was presented, Stewart's counsel renewed the objection to admission of the blood evidence due to the lack of notice concerning Ms. Villarreal as a potential witness and the State's subsequent failure to disclose the potentially exculpatory impeachment material that she no longer worked for Bexar County. Stewart also objected to the State's failure to amend the witness list to update Ms. Villarreal's contact information and disclose her departure from Bexar County in violation of its continuing duty to disclose. One of the prosecutors stated she personally learned just the day before that Ms. Villarreal no longer worked for Bexar County. The prosecutor stated she obtained Ms. Villarreal's cell phone number and email from "a list of contact information" and successfully contacted her. After a lengthy discussion, the trial court stated it was not going to exclude the blood evidence and inquired of defense counsel "what remedy are you asking for?" and "are you asking for a mistrial?" Stewart's counsel replied, "yes," and the court granted the mistrial. At that time, the prosecutor gave defense counsel the email address for Ms. Villarreal. The trial court ordered the State to also obtain her address and provide it to defense counsel.

When the case was re-set for trial, Stewart filed a pre-trial petition for writ of habeas corpus asserting that retrial was barred under the Double Jeopardy Clause. U.S. CONST. amends. V, XIV; TEX. CONST. art. I, § 14. Stewart argued retrial was barred because it was the State's intentional misconduct, i.e., nondisclosure of material witness information, that forced him to request a mistrial. After a non-evidentiary hearing on the habeas, the same trial court found, based on its recollection of the events, caselaw, and arguments of counsel, that there was not "any intentional misconduct on the State's part as far as the witness in the case, Ms. Elva Villarreal, they didn't have any intent to call her." Stewart perfected this appeal of the trial court's order denying habeas corpus relief.

## ANALYSIS

### *Habeas Corpus Standard of Review*

"An applicant seeking habeas corpus relief must prove his claim by a preponderance of the evidence." *Ex parte Cruz*, 350 S.W.3d 166, 167 (Tex. App.—San Antonio 2011, orig. proceeding). When reviewing a trial court's ruling on an application for habeas corpus, an appellate court reviews the evidence in the light most favorable to the trial court's ruling, and upholds the ruling absent an abuse of discretion. *Id.*

### *Applicable Double Jeopardy Law*

Generally, a defendant in a criminal case may not be put in jeopardy by the State twice for the same offense. U.S. CONST. amends. V, XIV; TEX. CONST. art. I, § 14; *see also Pierson v. State*, 426 S.W.3d 763, 769 (Tex. Crim. App. 2014). Because a defendant has a right to have the jury empaneled and sworn in his case to try it, the protection provided to defendants under the Double Jeopardy Clause attaches after the jury is sworn. *Pierson*, 426 S.W.3d at 769. Absent exceptional circumstances that show the prosecutor intentionally provoked a mistrial, the Double Jeopardy Clause is not violated if the trial ends prematurely. *Id.* at 770. The United States Supreme Court has explained that when the defendant is the party requesting the mistrial, the Double Jeopardy Clause generally does not bar the State from trying the defendant again. *Oregon v. Kennedy*, 456 U.S. 667, 672, (1982). A retrial may be barred by double jeopardy, however, if the defendant presents objective facts and circumstances to demonstrate that the prosecutor's misconduct in the case occurred because the prosecutor "intended to 'goad' the defendant into moving for a mistrial[.]" *Kennedy*, 456 U.S. at 676.

In 2007, the Texas Court of Criminal Appeals held that the standard announced in *Oregon v. Kennedy* for review of double jeopardy claims after a defense-requested mistrial also applies to such double jeopardy claims under the Texas Constitution. *Ex parte Lewis*, 219 S.W.3d 335, 371

(Tex. Crim. App. 2007). Thus, whether the claim is raised under the United States constitution or the Texas constitution, or both, a reviewing court must determine whether a defendant successfully moved for a mistrial because the prosecutor "engaged in conduct that was 'intended to provoke the defendant into moving for a mistrial.'" *Id.* at 336 (citing *Kennedy*, 456 U.S. at 679). In *Kennedy*, the Supreme Court stressed that such a degree of prosecutorial misconduct presents a narrow exception to the general rule that retrial is not barred when the mistrial was granted at the defendant's request. *Kennedy*, 456 U.S. at 673. The Supreme Court explained, "prosecutorial conduct that might be viewed as harassment or overreaching, even if sufficient to justify a mistrial on defendant's motion, therefore, does not bar retrial absent intent on the part of the prosecutor to subvert the protections afforded by the Double Jeopardy Clause." *Id.* at 675-76. In adopting the *Kennedy* standard, the Texas Court of Criminal Appeals overruled its prior precedent interpreting the Texas constitution's double jeopardy provision to also cover "reckless" conduct by the prosecution. *Ex parte Lewis*, 219 S.W.3d at 337, 371 (overruling *Ex parte Bauder*, 974 S.W.2d 729 (Tex. Crim. App. 1998), and remanding to trial court for consideration under *Kennedy* standard).

In another case decided during the same term as *Ex parte Lewis*, the Texas Court of Criminal Appeals discussed the *Kennedy* standard in the context of nondisclosure of *Brady* material.[2] *See Ex parte Masonheimer*, 220 S.W.3d 494 (Tex. Crim. App. 2007). In that case, the defendant was granted a mistrial in his two previous trials based on the prosecution's failure to disclose *Brady* material. Before the third trial setting, the defendant filed a pre-trial habeas corpus application claiming double jeopardy barred the retrial. The trial court granted habeas relief, finding that jeopardy had attached in the prior trials and retrial was barred by double jeopardy; the

---

[2] *Brady v. Maryland*, 373 U.S. 83 (1963).

trial court made no finding as to whether the prosecution intended to provoke a mistrial. *Id.* at 505. On review, the Court of Criminal Appeals looked to cases cited with approval in *Kennedy* in which habeas relief had been granted because the prosecution acted with intent to avoid a probable acquittal. *See id.* at 507-08. Applying that analysis to the facts before it, the *Masonheimer* opinion held that, viewing the evidence in the light most favorable to the trial court's ruling, the record supported a finding that the defendant's two motions for mistrial were "necessitated primarily by the State's 'intentional' failure to disclose exculpatory evidence that was available prior to appellee's first trial with the specific intent to avoid the possibility of an acquittal." *Id.* The court concluded, "[u]nder *Oregon v. Kennedy*, this deliberate conduct, accompanied by this specific *mens rea*, bars a retrial." *Id.*

Based on the Court of Criminal Appeals's application of the *Kennedy* standard in *Ex parte Lewis* and *Ex parte Masonheimer*, we have described the double jeopardy analysis as follows, "[a] retrial is not barred by double jeopardy unless the prosecutor engaged in the conduct with the intent to provoke the defense to request a mistrial or the prosecutor intentionally engaged in the conduct with the intent to avoid an acquittal." *Ex parte Coleman*, 350 S.W.3d 155, 160 (Tex. App.—San Antonio 2011, orig. proceeding) (internal citations omitted).

The habeas applicant has the burden to provide the court with a record sufficient to prove his allegations by a preponderance of the evidence. *Ex parte Coleman*, 350 S.W.3d at 160; *Ex parte Chandler*, 182 S.W.3d 350, 353 n.2 (Tex. Crim. App. 2005). In the habeas proceeding, the trial court may take judicial notice of earlier proceedings before the same judge and involving the same parties. *Coleman*, 350 S.W.3d at 160. "Appellate review of the [trial] court's ruling is not limited to the evidence adduced at the habeas hearing, but may include the record as it existed before the trial court at the time of the hearing." *Id.* The appellate court will reverse the ruling only if the record shows the trial court abused its discretion based on the decision it made when

ruling on the defendant's application seeking habeas relief. *Ex parte Wheeler*, 203 S.W.3d 317, 319-20 (Tex. Crim. App. 2006). Stewart argues in his brief for application of a *de novo* standard of review to "the issue of intentionality on the part of the State," asserting that intent is a legal question based on the facts contained in the record and does not turn on credibility. *See, e.g., Robinson v. State*, 377 S.W.3d 712, 722 (Tex. Crim. App. 2012) (when there is no dispute about the material historical facts reflected in the record, an appellate court may review the legal significance of the undisputed facts *de novo*). However, the issue of the prosecutor's intent is necessarily a fact question to be determined, in this context, from the circumstances and objective facts contained in the record. *Ex parte Coleman*, 350 S.W.3d at 160.

In *Wheeler*, the court provided a list of non-exclusive factors to be considered when determining whether the prosecutor's misconduct goaded or provoked the defendant into requesting a mistrial:

> 1) Was the misconduct a reaction to abort a trial that was "going badly for the State?" In other words, at the time that the prosecutor acted, did it reasonably appear that the defendant would likely obtain an acquittal?
>
> 2) Was the misconduct repeated despite admonitions from the trial court?
>
> 3) Did the prosecutor provide a reasonable, "good faith" explanation for the conduct?
>
> 4) Was the conduct "clearly erroneous"?
>
> 5) Was there a legally or factually plausible basis for the conduct, despite its ultimate impropriety?
>
> 6) Were the prosecutor's actions leading up to the mistrial consistent with inadvertence, lack of judgment, or negligence, or were they consistent with intentional . . . misconduct?

*Wheeler*, 203 S.W.3d at 323-24 (modified to delete "reckless" from the sixth factor per *Ex parte Lewis*); *see also State v. Rushing*, No. 09-16-00423-CR, 2017 WL 4182316, at *6 (Tex. App.— Beaumont Sept. 20, 2017, pet. filed).

*Application of the Law*

A distinction must be made between the prosecution's intentional failure to disclose *Brady* material or engagement in other misconduct that led to the remedy of a mistrial, and the specific intent necessary to bar a retrial, i.e., intent to provoke a mistrial to subvert double jeopardy protections or to avoid a possible acquittal. *Ex parte Coleman*, 350 S.W.3d at 160-61. "Double jeopardy 'is neither another form of due process protection ensuring the propriety of the criminal trial nor a means to protect against outrageous government conduct.'" *Id.* (quoting *Ex parte Lewis*, 219 S.W.3d at 358). Here, the mistrial cured the due process violation stemming from the State's violation of its continuing duty of disclosure under article 39.14, Code of Criminal Procedure and *Brady*. *Id.* at 160 ("The impropriety of the prosecutor's response was remedied by the mistrial.").

The relevant issue here is whether Stewart met his burden to prove the State committed the due process violation, i.e., engaged in the misconduct, with the specific intent (1) to provoke him into moving for a mistrial to subvert the protections of the Double Jeopardy Clause, or (2) to avoid the possibility of an acquittal. In making this determination, we review the entire record, including the habeas evidence and the trial record, and view the evidence in the light most favorable to the trial court's finding that the State did not have the specific intent necessary to bar retrial. *Id.*

The State argues there is nothing in the record to indicate its prosecutors had the requisite intent when they failed to disclose the material evidence, to wit: the current contact information for Ms. Villareal, the former Bexar County nurse who drew Stewart's blood. The State contends its prosecutors could not have withheld the information about the nurse's employment and contact information with the intent to avoid an acquittal because no evidence had been presented at the

- 8 -

time of the mistrial; therefore, it could not be said the trial was not going well for the State.[3] Further, the State asserts the record does not support a finding that it intended to subvert Stewart's double jeopardy rights because it shows the prosecutors did not originally intend to call the nurse to testify, and only changed its trial strategy after the trial court indicated it would require the nurse's testimony for admission of the blood draw evidence. This contention is supported by the record, as detailed above. At the time of the mistrial, the trial court had already reversed its ruling that the nurse's testimony was necessary for admission of the blood draw evidence. Nevertheless, the State disclosed the nurse's change in employment and provided her contact information to defense counsel at that time, late but prior to commencement of the State's case-in-chief. In addition, as the State points out, Stewart's counsel never requested a continuance during the discussions about Ms. Villarreal's contact information and availability as a witness. In other words, Stewart had a lesser remedy that he chose not to use, i.e., a motion for continuance, instead of a mistrial.

Stewart argues the record shows the State engaged in the type of "intentional strategic gamesmanship" that article 39.14 seeks to avoid because the State had the nurse's updated information in its work-product file, but failed to amend its witness list before trial. Stewart asserts that if his attorneys had timely received the nurse's updated information, they would have contacted her before trial and investigated whether she complied with the required procedures for the blood draw. As evidence of the required intent to subvert double jeopardy or avoid an acquittal, Stewart cites to the circumstances showing the prosecutors initially stated they had lost contact

---

[3] The State seems to suggest in its brief that jeopardy had not yet attached. However, jeopardy had attached because the jury had been sworn. *See Downum v. United States*, 372 U.S. 734, 735-36 (1963); *Hill v. State*, 90 S.W.3d 308, 313 (Tex. Crim. App. 2002).

with the nurse, but then located her cell phone number and email address in their file and were able to successfully contact her that day.

Viewing the record in the light most favorable to the trial court's ruling, as we must, we conclude the State's misconduct in failing to timely disclose the change in Ms. Villarreal's employment and update her contact information was not committed with the specific intent to provoke a mistrial to subvert double jeopardy or avoid an acquittal. *See Ex parte Coleman*, 350 S.W.3d at 160. Stewart has not carried his burden to show that the State engaged in this misconduct with the intent to goad him into moving for a mistrial. *See id.* Therefore, we hold the trial court did not abuse its discretion in denying Stewart's petition for habeas corpus relief barring his retrial.

## CONCLUSION

Based on the foregoing reasons, we overrule Stewart's issue on appeal and affirm the trial court's order denying habeas corpus relief.

Rebeca C. Martinez, Justice

DO NOT PUBLISH